231 F.2d 1
 DE ANGELIS COAL COMPANY, a Co-Partnership; American Lignite
Products Co., a Co-Partnership; Nazzareno DeAngelis,
Vincenzo DeAngelis, Mary DeAngelis, Joseph DeAngelis, Frank
DeAngelis, Individually and as Co-Partners, Doing Business
Under the Name of American Lignite Products Co., Appellants,
v.
The SHARPLES CORPORATION, Appellee.
 No. 14324.
 United States Court of Appeals Ninth Circuit.
 March 12, 1956.
Concurring Opinion Filed March 14, 1956.
Rehearing Denied April 26, 1956.
 
 Pierce Deasy, Deasy & Deasy, Jackson, Cal., for appellants.
 Walter K. Olds, San Francisco, Cal., for appellee.
 Before STEPHENS, POPE, and FEE, Circuit Judges.
 STEPHENS, Circuit Judge.
 
 
 1
 We are here considering an appeal from the United States District Court for the Northern District of California wherein jurisdiction is based upon diverse citizenship. The plaintiff, The Sharples Corporation, a Delaware corporation, doing business in Pennsylvania, is hereinafter referred to as 'Sharples' or as 'appellee'. The defendant, DeAngelis Coal Company, is a co-partnership consisting of several individuals, all but one of whom are citizens of California. The partnership does business in California under the name of American Lignite Products Co. These, as defendants, are hereinafter referred to as 'DeAngelis' or as 'appellant'.
 
 
 2
 DeAngelis purchased two like machines called PY-14-Super-D-Canter (we designate them as machines) from Sharples for $13,545.00 each. Upon the delivery of one of them, it was paid for and put to use, but DeAngelis was dissatisfied with its performance and claimed that it did not function up to a claimed guarantee. After the delivery of the second machine which was not paid for and was not uncrated, a series of letters passed between the parties without solution of the differences, and on February 22, 1952, DeAngelis wrote Sharples as follows:
 
 
 3
 '* * * We are at a complete loss to approach the situation any further and it appears necessary that we will have to return the one (machine) which is still in its original crate * * *.
 
 
 4
 'May we ask you therefore to give us your written permission to return it, as well as furnish shipping instructions. Shipment will leave here as you indicate, prepaid.'
 
 
 5
 Under date of March 5, 1952, Sharples replied:
 
 
 6
 '* * * We will accept the return of the last (machine) which we shipped to you, if this machine has not been used, and at a cancellation charge of 25% of the price of the machine.
 
 
 7
 'You purchased these two machines on the basis of full scale tests which were run, and which were satisfactory to you. * * * As a consequence, we feel no responsibility for changes in your processes, or in your set-up which makes the results of this machine unsatisfactory to you at the present time. * * *.'
 
 
 8
 Nine days later, (March 14, 1952) DeAngelis responded:
 
 
 9
 '* * * We wish to advise that we will keep a direct answer in abeyance pending an exchange of correspondence between our respective offices. * * *.'
 
 
 10
 Again the unsatisfactory performance of the first machine was adverted to and the letter ended:
 
 
 11
 'In any event, we will write you in detail as soon as possible.'
 
 
 12
 A little more than three weeks went by without further word from DeAngelis when (on April 7, 1952) Sharples wrote as follows:
 
 
 13
 'To date we have not received your check to offset our invoice 1151-1268 dated November 30, 1951, in the amount of $13,545.00. This invoice is now considerably past due our regular terms of net 30 days.
 
 
 14
 'May we have your check by return mail to close out this past due account or may we hear from you as to why payment is being withheld.'
 
 
 15
 As we view the matter up to this point, complaint has been made by DeAngelis as to the performance of the machine being faulty under the claimed guarantee, and its return with cancellation of the purchase has been requested. Sharples has responded denying responsibility under any guarantee but offers to take the machine back upon the payment of a 25% service charge. DeAngelis neither accepts nor rejects the offer but stated:
 
 
 16
 'will write you in detail as soon as possible.'
 
 
 17
 Sharples waits about three weeks and then asks payment of the purchase price of the machine. Clearly, the parties have arrived at no agreement and the demand for the full purchase price would be persuasive, if not conclusive, evidence of the withdrawal of Sharples' offer to take the machine back upon payment of the service charge.
 
 
 18
 If a contract, express or implied, was ever entered into between the parties as to the return of the machine, it was because of later events in relation to what has gone before. There were later events, but we do not think they can be so construed as to constitute a contract. On the contrary, we think they are altogether consistent with and add to the certainty that there was no contract to pay the service charge. One week after the date of the Sharples note demanding the purchase price, DeAngelis wrote: (April 14):
 
 
 19
 'By now you have probably received the return of the (machine)',
 
 
 20
 and concludes:
 
 
 21
 'It is indicated in one of your recent letters that if we were to return this equipment we would have to pay a 25% service charge. We wish to advise you that we definitely will not accept this service charge, as your equipment failed to perform as your laboratory guaranteed.'
 
 
 22
 It is not denied that the machine was shipped to Sharples March 20, 1952, six days after DeAngelis informed Sharples that it would hear soon as to whether DeAngelis would accept the offer to return the unused machine and pay the service charge. The machine was received by Sharples April 16, 1952. About a week after receipt of the DeAngelis letter (of April 14, 1952) declaring it would not pay the service charge, Sharples demanded its payment. The evidence does not show whether the letter declining to agree to pay the service charge had been received before or after Sharples had received the machine.
 
 
 23
 There isn't a word to the effect that DeAngelis would pay the service charge. And the only possible way in which DeAngelis could be held to have agreed to it is to hold that the return of the machine after the service charge offer had been made constituted an acceptance thereof. But all along, without any exception, DeAngelis had pressed its claim that the purchase was upon a guarantee and that performance had failed. If it was right about that, it had a right to return the machine. The mere offer to let it be returned upon payment of a service charge would not cancel that right.
 
 
 24
 However, the trial court found that DeAngelis had agreed to pay the service charge as of February 22, 1952, and gave judgment therefor with interest from said date, and denied DeAngelis his counterclaim for freight.
 
 
 25
 We hold that the giving of the judgment on the alleged contract was clear error and must be reversed.
 
 
 26
 Nominally, the complaint is cast as an action on the contract, and in another count as an action for goods sold and delivered, but the sum sought to be recovered in each count is based upon the allegation that DeAngelis had agreed to pay the sum of $3,386.25. And there is no evidence of any other theory. Apparently, the pleader is saying that the possession and title to the machine was taken by Sharples upon its return and that the damages resulting was by agreement the service charge placed at $3,386.25. But no such agreement was ever made. In the circumstances, it is clear that Sharples accepted the return of the machine upon the failure of DeAngelis to pay for it and thereupon a cause of action for resulting damage ripened. Sharples could have refused to accept the return or could have received it to the order of DeAngelis and sued for the purchase price. This it did not do.
 
 
 27
 We affirm that part of the judgment which denies recovery on the counterclaim, and reverse that part of the judgment which decrees a money judgment on the complaint.[1] The action is remanded to the district court to take such further action as it may be advised, not inconsistent with this opinion. We do not hold that Sharples is barred from the recovery of damages which it may be able to prove, and the trial court may permit such amendment to the complaint and subsequent pleadings as it may deem proper.
 
 
 28
 Reversed in part. Affirmed in part.
 
 
 29
 POPE, Circuit Judge, concurring specially.
 
 
 30
 I concur in the result reached in the foregoing opinion but not with all of the reasons given there for arriving at that conclusion.
 
 
 31
 The opinion seems to find 'evidence of the withdrawal of Sharples' offer to take the machine back upon payment of the service charge.' With that I disagree. The record shows that on March 5, 1952, Sharples replied to DeAngelis' request for permission to return the machine that Sharples would accept the return of the machine at a cancellation charge of 25%. To this DeAngelis replied that they were keeping an answer in abeyance but would write as soon as possible. On March 20, DeAngelis shipped the machine and Sharples received it on April 16. In the meantime on April 7, before Sharples had notice of the shipment, it wrote DeAngelis calling attention to the unpaid purchase price and requesting payment. I think this was not action inconsistent with or in revocation of the preceding offer. Until Sharples' offer was accepted the full purchase price remained unpaid and payable and it was entirely in order for Sharples to say so.
 
 
 32
 I am of the opinion, however, that the decision in this case turns upon the simple question whether in shipping the machine after Sharples' offer to accept the return at a cancellation charge of 25%, DeAngelis accepted Sharples' offer. It is elementary that the acceptance of such on offer may be made by acts or conduct as well as by words.[1] Thus, if I say to my neighbor: 'If you want that horse you have been asking for you can have it for $100' and the neighbor comes and takes the horse and leads it away, he has accepted my offer and owes me $100 notwithstanding he may protest that he is unwilling to pay that sum. However, the shipment of the machine by DeAngelis under the circumstances here present was not that kind of an acceptance. An acceptance must be unequivocal; it must be positive and unambiguous. Cf. Williston on Contracts, § 72; Restatement Contracts, § 58. We must conclude therefore that the shipment of the machine by DeAngelis was an equivocal act in that it could be construed to have been an act performed pursuant to its own insistence that there had been a breach of warranty and that it had an absolute right to return it. This claimed right DeAngelis had been insisting upon and in consequence I think it cannot be said that certainly the shipment was made solely in response to Sharples' offer and by way of acceptance thereof.
 
 
 33
 In my view the situation is ruled by the principle applied in Wright v. Sonoma County, 156 Cal. 475, 105 P. 409. In that case Wright owned land over which the county had a highway easement. The county drilled a well on the right of way and pumped water which it used for sprinkling the highway. Wright notified the county that it was forbidden to take any water from the well and that if it did continue to do so notwithstanding this prohibition, Wright would charge $50 per day for each day during which water was removed in violation of the notice. The county went right on using the water and thereafter the Supreme Court held that the county had no right to use the water and further use was enjoined. Wright sought to recover the sum of $50 per day for each day in which the county used the water following the notice and also for each day the county used the water following the Supreme Court's decision. It was held that there was no express contract to this effect, and further, that the taking of the water even after the decision of the Supreme Court became known to the county could not be held to show an acceptance of the proposition to sell the water at a specified price. It is plain that the decision was based upon the proposition that the use of the water by the county could as readily be attributed to the county's insistence that it had a right to the water as to an intention on its part to accept the $50 per day proposition.
 
 
 34
 It is because of a similar ambiguity here that I agree there was no proof in this case of an acceptance of Sharples' subsequent offer.
 
 
 
 [1]
 There is no attack upon the findings in the appellant's Points upon appeal, or in its brief, except that the appellant claims that the evidence does not support the findings of fact and conclusions of law 'in the particulars noted upon which the judgment is grounded', to-wit: There was no second contract, and the measure of damages was erroneous. In this posture, we do not think the trial court erred in denying DeAngelis' counterclaim for freight charges. Clearly, if there was no 'warranty of suitability for the purpose for which the same machines were sold by (Sharples) to (DeAngelis)' and if DeAngelis Coal Company 'did buy and purchase the aforesaid machines solely and only upon their own examination and inspection and exercise of judgment, and that the said (DeAngelis) did not rely upon any warranty or representation of the said (Sharples) * * *', as Finding VI states, then DeAngelis had no right to charge a freight payment to Sharples
 
 
 [1]
 Restatement Law of Contracts, § 21: 'The manifestation of mutual assent may be made wholly or partly by written or spoken words or by other acts or conduct.' See also Williston on Contracts, Revised edition, § 90; and California Civil Code, § 1584